```
UNITED STATES DISTRICT COURT
   DISTRICT OF CONNECTICUT
```

| | |
|---|---|
| PAULETTE BOLLING, ON BEHALF OF HER MINOR SON, TRISTAN ROBERTS,<br>    Plaintiff,<br><br>v.<br><br>BOARD OF EDUCATION OF THE CITY OF ANSONIA, CAROL MERLONE, INDIVIDUALLY AND AS SUPERINTENDENT AND SUSAN H. McKERNAN, INDIVIDUALLY AND AS PRINCIPAL OF ANSONIA HIGH SCHOOL,<br>    Defendants. | :<br>:<br>:<br>:<br>:  CIVIL ACTION NO.<br>:  3-07-cv-1593 (JCH)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:  FEBRUARY 5, 2008<br>: |

**RULING RE: PLAINTIFF'S MOTION FOR COSTS AND ATTORNEYS' FEES (Doc. No. 18) and PLAINTIFF'S SUPPLEMENTAL MOTION FOR ATTORNEYS' FEES (Doc. No. 25)**

Plaintiff Paulette Bolling brings this Motion for Attorney's Fees pursuant to 42 U.S.C. § 1988. See Pl's Mot. for Costs and Attorney's Fees at 2 (Doc. No. 18). Bolling filed a Complaint with this court on October 30, 2007, claiming that defendants the Board of Education of the City of Ansonia, Carol Merlone, individually and in her official capacity, and Susan H. McKernan, individually and in her official capacity, (collectively "defendants") violated her son Tristan's right to due process under the 14th Amendment by expelling him from school. On November 2, 2007, the court granted Bolling's request for a Temporary Restraining Order ("TRO") requiring defendants to permit Tristan back into school. On November 14, 2007, the parties filed a Joint Stipulation whereby Bolling dropped her claims and the defendants rescinded Tristan's expulsion. See Doc. No. 16. That Stipulation was entered by Order of the court the same day. See Doc. No. 17.

**I.      DISCUSSION**

   **A.      Prevailing Party Status**

Defendants argue that Bolling is not entitled to attorneys' fees under section 1988 because she was not a "prevailing party" under the standard established by the Supreme Court in Buckhannon Bd. & Care Home v. West Virginia Dep't of Heath & Human Resources, 532 U.S. 598, 604 (2001).  The court disagrees.

The Supreme Court in Buckhannon held that a party cannot be considered "prevailing" for the purposes of section 1988 when "they achieved their desired result because the lawsuit brought about a voluntary change in the defendant's conduct."  Id. at 600.  Rather, the court held, a party is prevailing only when they have achieved a "judicially sanctioned change in the legal relationship of the parties."  Id. at 605.  The Second Circuit has interpreted the rule in Buckhannon to permit parties to prevail when they have achieved such a change through the issuance of a stay, a preliminary injunction, or a court order directing a defendant to be released on bail.  Vacchio v. Ashcroft, 404 F.3d 663, 673 (2d Cir. 2005).  The relevant consideration in the Second Circuit's view is whether the court's action is "governed by its assessment of the merits."  Id.

The Temporary Restraining Order issued by the court falls squarely into the category of "interim judicial relief," which qualifies a party as "prevailing" under the standard established in Vacchio.  First, the Order certainly altered the legal relationship between the parties in this case by reversing the status quo and requiring defendants to permit Bolling's son to return to school.  Second, as Bolling correctly points out, the

court based its Ruling on its conclusion that Bolling's likelihood of success on the merits was high. See Pl.'s Reply at 5 (Doc. No. 24). Therefore, the court finds that Bolling was the prevailing party in this case and is entitled to attorneys' fees under section 1988.

### B. Work Done Prior to Filing Claim

Defendants argue that Bolling is not entitled to attorneys' fees generated defending her claim at the administrative hearing before the Ansonia Board of Education. The court agrees. In Webb v. Board of Education of Dyer County, 471 U.S. 234 (1985), the Supreme Court held that work done in preparation of an administrative proceeding prior to the filing of a civil rights complaint was not "reasonably expended *on the litigation*" as required by section 1988 unless that work was "both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached." Id. at 242-3. Therefore, Bolling's request for fees for work done in preparation of and time spent by her attorney at the administrative hearing before the Ansonia Board of Education is denied.

With the exception of Attorney Mastronardi's meetings with his clients on October 1 and October 9, 2007, all of the hours identified in Attorney Mastronardi's time record prior to October 23, 2007 are excluded. See Time Records of Attorney Mastronardi at 1-2, Ex. 2 to Pl.'s Mot. for Costs and Reasonable Attorney's Fees (Doc. No. 18). The time he spent with his clients on October 9, 2007 is reduced by .75 hours to account for the time spent in preparation of the administrative hearing. Therefore, the total number of hours documented by Attorney Mastronardi is reduced by 13.25

hours.

**C.    The Costs of Ordering the Transcript**

Defendants argue that Bolling cannot recuperate the cost of preparing the transcript of the expulsion hearing pursuant to Connecticut General Statute section 4-177. CGSA § 4-177 provides that a party requesting a transcript of a hearing pursuant to the Connecticut Uniform Administrative Procedure Act "shall pay the cost of such transcript." Defendants do not offer any explanation as to why this Connecticut statute would govern the question of costs in a civil rights action in federal court and the court sees none. The preparation of this transcript was clearly an expense necessary to litigate Bolling's claim and as such is a cost that she may claim as the prevailing party in this suit.[1]

**D.    Reasonableness of Attorneys' Fees**

In a recent Second Circuit decision, Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110 (2d Cir. 2007), the court discussed the two methods courts have used in calculating reasonable fees – the "lodestar" method, which is "based upon 'the hours reasonably spent by counsel . . . multiplied by the reasonable hourly rate,'" Cruz v. Local Union No. 3 of Int'l Broth. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted), and the twelve-factor analysis as developed in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). As the Second Circuit explained, these two methods "considered substantially the same

---

[1] Indeed, in the first status conference in this case, before the court's Ruling on the TRO, the court inquired about that transcript and when it would be available to the court. See Hearing on October 10, 2007 (Doc. No. 8).

4

set of variables – just at a different point in the fee-calculation process." Arbor Hill, 493 F.3d at 115. In Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), the Supreme Court "adopted the lodestar method in principle . . . without, however, fully abandoning the Johnson method." Id. According to the Second Circuit, however, the simultaneous application of these methods "proved to be in tension," and subsequent circuit courts "struggled with the nettlesome interplay between the lodestar method and the Johnson method." Id. at 116.

In an attempt to clear up this "confusion," id. at 116, the Second Circuit's recent opinion abandons the use of the term "lodestar." Instead, it explains that the better course is:

> for the district court, in exercising its considerable discretion, to bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.[2] The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that hourly rate to calculate what can be properly termed the "presumptively reasonable fee."

---

[2]The Second Circuit directs the district court, "in determining what a reasonable, paying client would be willing to pay, [to] consider factors including, but not limited to, the complexity and difficulty of the case, the available and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) the attorney expected from the representation." Id. at 112.

Id. at 117-8 (emphasis in original). "After determining the amount of the presumptively reasonable fee, the court may use its discretion to increase or reduce the amount based on the particular circumstances of the case." Chan v. Sung Yue Tung Corp., 2007 WL 1373118, at *1 (S.D.N.Y. May 8, 2007).

**1. Reasonableness of Hourly Rate**

Defendant's argue that the rate of $400 per hour requested by Bolling's counsel, Attorney Gary Mastronardi, is unreasonable. See Def.'s Mem. in Opp. to Mot. for Att.'s Fees at 14 (Doc. No. 19). The court agrees. While the court acknowledges that Attorney Mastronardi has been in practice for over twenty years, the court does not find that Mastronardi has demonstrated that he is an expert in civil rights litigation such that he can command a fee at the highest end of the range for civil rights lawyers in Connecticut. Therefore, based on the court's years of practice and knowledge of rates charged generally within the District Court, the court finds that Mastronardi could reasonably charge $350 per hour.

**2. Reasonableness of Hours Billed**

"After determining the reasonable hourly rates for each attorney, the Court must examine the hours expended by counsel to determine their reasonableness, excluding 'excessive, redundant, or otherwise unnecessary' hours." Chan, 2007 WL 1373118, at *5 (citing Hensley, 461 U.S. at 434). In reviewing the hours spent by the plaintiff's attorney, the "task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).

"Plaintiff's counsel is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." Hensley, 461 U.S. at 437 n.2.

Defendants argue that the six hours Attorney Mastronardi spent on October 25, 2007, driving to Litchfield Superior court to locate and review the court file in Packer v. Board of Education should be excluded because "there is no way for the court to ascertain the usefulness of travel and file review to the litigation of this matter." Def.'s Mem. at 18. The court disagrees. The court's understanding of Packer was essential to its determination that Bolling would likely prevail on the merits of her claim. Therefore, the court finds that time spent reviewing that case file was reasonably expended to advance this litigation.

Finally, Attorney Mastronardi logged an additional 13.75 hours researching and drafting his reply memorandum in support of Bolling's Motion for Attorneys' Fees. See Pl.'s Suppl. Motion for Attorney's Fees at 2 (Doc. No. 25). Attorney Mastronardi provides no details as to when he worked on this memorandum, or how long he spent on the various tasks necessary to draft it. Affidavit Re: Suppl. Mot. for Att.s' Fees (Doc. No. 26). This gives the court little basis for determining the reasonableness of these fees. As such, it is the court's best judgment, based on its experience and practice, that 6.5 hours would be sufficient time to perform such a task by an attorney as experienced as Attorney Mastronardi. As discussed above, $350 per hour is a reasonable rate for Attorney Mastronardi's services in this case. Therefore, Bolling's Supplemental Motion for Attorneys' Fees is granted, but the total amount awarded for those additional hours is $2275.

## II. CONCLUSION

For the foregoing reasons, Bolling's Motion for Costs and Reasonable Attorneys' Fees (Doc. No. 18) is GRANTED. Furthermore, Bolling's Supplemental Motion for Attorney's Fees (Doc. No. 25) is GRANTED. The court awards $17,902.50 in fees and $1,294.00 in costs.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 5th day of February, 2008.

    /s/ Janet C. Hall
Janet C. Hall
United States District Judge